In the Matter of John I. SUTMIRE, dba John I. Sutmire & Associates, and Betty M. Sutmire, Bankrupts.

WINTER PARK NATIONAL BANK, Plaintiff,

v.

John I. SUTMIRE, dba John I. Sutmire & Associates, Defendant.

Bankruptcy No. 78–161–Orl.

United States Bankruptcy Court, M. D. Florida, Orlando Division.

Dec. 27, 1979.

R. Edward Cooley, Orlando, Fla., for plaintiff.

P. Thomas Boroughs, Winter Park, Fla., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION DETERMINING DISCHARGEABILITY

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration is the dischargeability of a debt admittedly due

and owing by John I. Sutmire, the bankrupt in the above-styled proceeding, to Winter Park National Bank, the plaintiff who instituted this adversary proceeding pursuant to Sec. 17c of the Bankruptcy Act. The claim of non-dischargeability is based on the contention that the obligation is a liability created by a materially false financial statement allegedly submitted by the bankrupt with the intent to induce the plaintiff to grant a loan and that the plaintiff in reliance thereon granted the loan. The action was originally brought against John I. Sutmire and his wife, Betty M. Sutmire, however, the complaint as it relates to Betty M. Sutmire was dismissed.

The pertinent facts as they appear from the record and as presented at the final evidentiary hearing, can be briefly summarized as follows:

On March 15, 1977, the bankrupt and his wife furnished the plaintiff with their personal financial statement for the purpose of obtaining a loan and on April 26, 1977, and May 20, 1977, the bankrupt and his wife obtained two personal loans from the plaintiff. These personal loans have been satisfied and are not the subject of this controversy. However, subsequent to the granting of the two personal loans, a corporation known as Cardinal Exterior Cleaning Co., Inc., of which the bankrupt was both president and principal stockholder, obtained a loan from the plaintiff on June 14, 1977 in the amount of $13,740.48. This loan was secured by certain physical assets of the corporation and was personally guaranteed by the bankrupt. It is the debt incurred by virtue of the personal guarantee of this loan that the plaintiff seeks to be declared non-dischargeable. The principal dispute in this matter is whether the personal financial statement was given to the plaintiff solely for the purpose of the personal loans or for the purpose of the subsequently granted corporate loan as well. An officer of the plaintiff testified that the financial statement was submitted for the purpose of the corporate loan, that the plaintiff always required personal guarantees when lending money to small, closely held corporations and that the plaintiff required personal financial statements in connection with personal guarantees on corporate loans. However, the bankrupt testified that the financial statement was given to the plaintiff only in connection with the personal loans and that he was never informed of the requirement of a personal guaranty until the day the corporate loan was actually closed.

It should also be noted that the financial statement submitted into evidence by the plaintiff was made out to the Flagship Bank of Orlando rather than the plaintiff. The bankrupt, however, submitted a financial statement which was made out to the plaintiff. An officer of the plaintiff testified that one of the plaintiff's secretaries copied the bankrupt's Flagship Bank statement onto a form of the plaintiff's.

The plaintiff's claim of non-dischargeability is based on Sec. 17a(2) of the Bankruptcy Act which provides in pertinent part as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (2) are liabilities . . . for obtaining money . . . on credit . . . . in release upon a materially false statement in writing respecting his financial condition made . . . with intent to deceive . . . ."

In order to obtain a declaration of non-dischargeability under Sec. 17a(2), the burden is on the plaintiff to establish that (1) the bankrupt made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations, and (5) that the creditor sustained the alleged loss and damage as a result of the representation having been made.

The crucial elements in this instance are whether the bankrupt submitted the statement with the requisite fraudulent intent and whether the plaintiff relied on the financial statement in granting the corporate loan.

Considering the element of reliance, it must be noted that the loan was secured by assets of the corporation. The record further reveals that the plaintiff relied to a great degree upon the cash flow of the corporation, the reputation of the bankrupt and the fact that one of the directors knew the bankrupt personally. While under certain circumstances partial reliance upon a financial statement is sufficient to render a debt non-dischargeable under Sec. 17a(2) of the Bankruptcy Act; see *In re Sewell*, 361 F.Supp. 516 (S.D.Ga.1973), such reliance must, nevertheless, be meaningful. In light of the fact that the loan was secured and that an officer of the plaintiff testified that he "primarily relied" upon the bankrupt's reputation and the corporation's cash flow, any meaningful reliance by the plaintiff on the bankrupt's personal financial statement is, at best, questionable. Therefore, this Court is satisfied that the plaintiff has failed to meet its burden of proof on the issue of reliance.

In considering the element of fraudulent intent, it should be pointed out that in order to bar a discharge of a particular debt under Sec. 17a(2) of the Bankruptcy Act, the objecting party must prove actual or positive fraud, not merely fraud implied by law and must carry the burden of proving actual positive fraud. *Brown v. Buchanam*, 419 F.Supp. 199 (D.C.Va.1975); *In re Dolnick*, 374 F.Supp. 84 (D.C.Ill.1974); *U. S. v. Syros*, 254 F.Supp. 195 (E.D.Mo.1976); *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975).

. Applying these principles to the controversy under consideration, it is evident that the proof presented by the plaintiff in support of its claim of non-dischargeability falls short of the requisite degree of proof and lacks the necessary persuasiveness to establish the requisite fraudulent intent. The bankrupt testified that his financial statement was given to the plaintiff only for the purpose of the personal loan and not for the corporate loans. Such facts are, of course, totally inconsistent with a finding of fraudulent intent in relation to the corporate loan. However, the bankrupt's testimony was contradicted by the plaintiff's witness. Therefore, viewing the record in the entirety, it is apparent that this record is equally consistent with the conclusion that there was an intentional fraud and that the transaction was totally devoid of any intentional fraud. Thus, since the evidence is in equilibrium, the plaintiff has failed to carry the burden of proof as to the existence of any specific and actual intent to deceive on the part of the bankrupt.

The plaintiff having failed to establish any meaningful reliance on the financial statement by the plaintiff and any fraudulent intent on the part of the bankrupt, the debt under consideration must be declared to be dischargeable.

A separate final judgment will be entered in accordance with the foregoing.