In re William F. D'ANNOLFO, Debtor.

Ernest HENDERSON, III, Plaintiff,

v.

William F. D'ANNOLFO, Defendant.

Bankruptcy No. 84–00664–JG.

Adv. No. A84–0247–JG.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 18, 1985.

Paul P. Daley and Lisa G. Arrowood, Hale & Door, Boston, Mass., for plaintiff.

Joseph P. Foley, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

Ernest Henderson, III, plaintiff, has filed a Complaint to Determine Nondischarge-

ability of Debt pursuant to § 523(a)(2)(A) of the Bankruptcy Code and now moves for summary judgment on his Complaint. His motion is based on a judgment for $85,000 after a jury verdict on special questions which was affirmed on appeal. The jury responded that the defendant William F. D'Annolfo, committed fraudulent misrepresentations upon which the plaintiff relied in purchasing a nursing home from D'Annolfo. The plaintiff argues that since the judgment entered against D'Annolfo was for false representations, it is a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A), and that because of the jury's finding of fraud, by application of the doctrine of collateral estoppel, the plaintiff is entitled to judgment as a matter of law requiring allowance of plaintiff's motion for summary judgment. The debtor argues that summary judgment is inappropriate because the issues determined in the state court action were not identical to the elements of an action for nondischargeability under § 523(a)(2)(A). The facts are basically undisputed and are as follows.

On November 7, 1969, Ernest Henderson, III ("Henderson") entered into a written agreement to purchase the assets of Normandy House Nursing Home, Inc. ("Normandy"). In connection with the agreement, the defendant, William F. D'Annolfo ("D'Annolfo") expressly warranted that the nursing home was not operating in violation of the laws of the Commonwealth of Massachusetts, that no violation was known to Normandy, that Normandy had no reason to believe that any such violation existed, and that the building in which the nursing home was housed was in good condition. In 1970, Henderson discovered numerous problems with the electrical system in the nursing home, requiring a great many repairs. The problems discovered were such as to create a health and fire hazard to the patients.

On November 1, 1971, Henderson commenced a suit against D'Annolfo and others, alleging fraudulent misrepresentation. The case was first submitted to an auditor/master, facts not final, then it was tried by a jury. The judge instructed the jury that the plaintiff was required to prove his case "by a fair preponderance of the credible evidence". The court submitted the case to the jury on the following special questions:

(1) Do you find that William D'Annolfo made fraudulent misrepresentations to Ernest Henderson III for the purpose of inducing him to purchase Normandy House and if so do you further find that Ernest Henderson purchased Normandy House in reliance upon such false misrepresentation?

(2) If the answer to number one is yes, what are the damages?

The jurors answered the first question "Yes" and the second "$85,000." The Court entered judgment for the plaintiff. D'Annolfo appealed from the judgment and denial of his Motion for Directed Verdict. The Appeals Court affirmed *Henderson v. D'Annolfo*, 15 Mass.App. 413, 446 N.E.2d 103 (1983). The Supreme Judicial Court denied D'Annolfo's petition for further appellate review.

Section 523(a)(2)(A) excepts from the discharge of an individual debtor any debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A) (Supp.1984). In nondischargeability proceedings, in order for the court to give collateral estoppel effect to findings by a state court, "all the relevant issues in the subsequent proceeding must have been actually litigated and determined in the prior proceeding." *In re Longo*, 37 B.R. 900, 901 (Bankr.D.Mass.1984). "Collateral estoppel or "issue preclusion" prevents parties from relitigating only those issues actually and necessarily litigated in a prior proceeding." *J. Ferriell, The Preclusive Effect of State Court Decisions in Bankruptcy*, 58 Am.Bankr.L.J. 349, 350 (1984) (hereinafter referred to as "Ferriell"). Where a creditor has obtained a judgment against a debtor in a lawsuit

prior to the debtor's bankruptcy, the bankruptcy court, faced with the creditor's action for a nondischargeability under § 523 of the Bankruptcy Code, must determine what effect should be given to the prior litigation. Although the doctrine of res judicata has no place in nondischargeability proceedings because of the bankruptcy courts exclusive jurisdiction to determine nondischargeability, *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the principles of collateral estoppel can apply in nondischargeability cases so that issues that have been fully litigated in a prior state proceeding need not be relitigated. *Id.* at 140 n. 10, 99 S.Ct. at 2213 n. 10.

■ An issue previously determined may not be relitigated where the following elements are satisfied: the issue sought to be precluded must be the same as that in the prior action; the issue must have been actually litigated; the issue must have been determined by a valid and final judgment; and, the determination must have been essential to the judgment. *In re Ross,* 602 F.2d 604, 608 (3d Cir.1979). Whether the standards employed in the state action were the same as those to be utilized under § 523 requires an inquiry into state law. *In re Greenblatt,* 8 B.R. 994 (Bankr.E.D.N. Y.1981). "In many cases, differences between state law upon which the prior judgment was based and the federal standards for nondischargeability will make it improper to give the state judgment any preclusive effect. However, where the bankruptcy court is satisfied that the issues resolved in the previous trial are the same as those raised in the dischargeability hearing, issue preclusion may be permitted." *Ferriell,* 58 Am.Bankr.L.J., *supra* at 360. Where a state court jury has rendered a judgment against a debtor for fraud and breach of trust which presents the same elements of proof which must be. established by the creditor under § 523 (a)(2)(A), summary judgment on the creditors' nondischargeability action is appropriate. *In re Greenblatt,* 8 B.R. 994, 997 (Bankr.E.D.N.Y. 1981).

However, if the standard of proof used by the state court was less burdensome than the standard of proof required to be met in nondischargeability proceedings, collateral estoppel effect cannot be given to the state court judgment. *Ferriell,* 58 Am. Bankr.L.J., *supra,* at 362–63. Thus if the state judgment relied upon was based on a finding of fraud by the preponderance of the evidence, issue preclusion is not possible where the bankruptcy court requires proof by clear and convincing evidence. *Ferriell,* 58 Am.Bankr.L.J., *supra,* at 363.

■ The overwhelming majority of courts (including this court) requires proof of the fraud by clear and convincing evidence in nondischargeability proceedings under § 523(a)(2)(A). *E.g., In re Kimzey,* 761 F.2d 421 (7th Cir.1985); *In re Wade,* 43 B.R. 976 (Bankr.D.Colo.1984); *In re Labuda,* 37 B.R. 47 (Bankr.D.Fla.); *In re Kirst,* 37 B.R. 275 (Bankr.D.Tenn.1982); *In re Toscano,* 23 B.R. 736 (Bankr.D.Mass.1982); *In re Aldrich,* 16 B.R. 825 (Bankr.W.D.Ky. 1982). A few bankruptcy courts have employed a preponderance of the evidence test. *In re Baiata,* 12 B.R. 813 (Bankr.E. D.N.Y.1981); *In re Raimos,* 8 B.R. 490 (Bankr.D.Wisc.1981). Under the former Bankruptcy Act, fraud within the dischargeability exception of § 17a(2) had to be proved by clear and convincing evidence. The legislative history to § 523(a)(2) of the Code confirms that the quantum of proof requires clear and convincing evidence of fraud. *L. King, 3 Collier On Bankruptcy,* ¶ 523.09, at 523–54 (15th ed. Sup.1984).

I disagree with the plaintiff's assertion that the "preponderance of the evidence" standard applies in fraud nondischargeability cases. *In re Mascolo,* 505 F.2d 274 (1st Cir.1974) cited by the plaintiff does not support the application of the preponderance of the evidence standard to § 523(a)(2)(A) proceedings. In *Mascolo,* the Court of Appeals upheld the revocation of a debtor's discharge under § 14 of the former Bankruptcy Act for committing a false oath in his bankruptcy schedules. The Court of Appeals rejected the debtor's argument that the creditor had to prove the

higher standard of criminal perjury, and instead ruled that the creditor must prove by a preponderance of the evidence that the debtor committed a material and intentional untruth. Noting that once it appeared that the oath was false, the debtor was required to come forward with evidence that he did not commit a false oath. *Id.* at 276.

Historically, the degree of proof required in false oath discharge cases has been by a preponderance of the evidence. "The creditor need only show that the debtor committed the act." *L. King, 4 Collier On Bankruptcy*, § 727.03, 727–43 (15th ed. Supp. 1984). Because the *Mascolo* case dealt with false oaths in papers filed with the court, it has no bearing on the degree of proof required in § 523(a)(2)(A) nondischargeability proceedings wherein a creditor alleges the debt was incurred by the debtor's actual fraud.

When ruling on a motion for summary judgment, it is not the function of the court to resolve factual disputes. The moving party has the burden of establishing that there are no issues of material fact and that he is entitled to judgment as a matter of law. *In re Inforex, Inc.*, 26 B.R. 515 (Bankr.D.Mass.1983). All inferences to be drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion for summary judgment.

■ In the present case, although the action in state court against the debtor was premised on fraud and misrepresentation of the same type as § 523(a)(2)(A), the judge charged the jury that for the plaintiff to prevail on his claims against D'Annolfo, the plaintiff had to establish fraud by a "fair preponderance of the credible evidence." Although it is clear from the jury's Answer to special questions that it specifically found that D'Annolfo made fraudulent misrepresentations to Henderson for the purpose of inducing him to purchase the nursing home, that Henderson purchased the home on reliance on such false representations, and that Henderson sustained damages of $85,000, this

Court must assume that the finding was based on the lower standard of proof which was given in the Court's instructions. In denying D'Annolfo's Motion for Directed Verdict, which was upheld on appeal, the trial court ruled that the evidence viewed in a light most favorable to D'Annolfo justified a verdict against him. There was no finding by the trial court or by the appeals court that the plaintiff proved fraud by clear and convincing evidence, which he must do to sustain his claim of nondischargeability in this Court. Because the Court is unable to find that there is clear and convincing evidence that the debtor committed actual fraud or made false representations in the sale of the nursing home to the plaintiff, the Motion for Summary Judgment on the Plaintiff's Complaint for Nondischargeability is denied.